United States District Court
Southern District of Texas
**ENTERED**
March 29, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AEGIS SECURITY INSURANCE COMPANY, § § § | |
| Plaintiff, § § | |
| v. § § | Civil Action No. H-23-356 |
| RANDI GARCIA, § § | |
| Defendant. § | |

MEMORANDUM AND ORDER

Pending is Plaintiff Aegis Security Insurance Company's ("Aegis") Motion for Summary Judgment ("Motion") (Document No. 16), to which Defendant Randi Garcia filed a response in opposition (Document No. 18), and Aegis filed a reply in support of its Motion (Document No. 21). After considering their submissions, the evidence, and applicable law, the Court concludes that the Motion should be granted.

I.   Background

This is an insurance dispute arising from a historical freeze event, attributed to a polar vortex, that engulfed the entire State of Texas February 11-20, 2021. Garcia's home, like many others, "suffered severe water damages caused by a pipe burst during a

freeze on or about February 16, 2021[.]"¹ The damage to her property exceeded $160,000, and more than a year after the freeze Garcia filed a claim on her Aegis homeowners' insurance policy to recoup the loss.² Aegis received and referenced the claim as Claim No. 834441.³

Aegis had issued Texas Homeowners Policy, No. KOP60035342/R01, insuring Garcia's home from April 19, 2020 to April 19, 2021 ("Policy").⁴ The Policy was a "named perils" policy, which insured against physical loss to the property caused by a Section I peril.⁵ Except for certain water related perils covered by Endorsement MS HO 90, the Policy's liability limits for losses caused by a Section I peril were $193,800 for the dwelling, $77,500 for personal property, and $19,400 for loss of use.⁶ For the same premium charged, the Policy also included Texas Homeowners Amendatory Endorsement MS HO 90 adding under Section I certain water related perils; as to the added water related perils relevant

---

¹ Document No. 18, Affidavit of Defendant Randi Garcia ("Garcia Affidavit") at ¶ 7.

² Id. at ¶¶ 3-4, 7, 15.

³ Document No. 16, App'x 074.

⁴ Id. at App'x 019.

⁵ Id. at App'x 028-029.

⁶ Id. at App'x 019.

here Aegis's liability was limited to $1,500, referred to as a sublimit.[7]

Garcia belatedly filed her claim with Aegis because she "didn't know if I was covered or not. I didn't even think to think I was covered."[8] Thus, according to her Response, it was not until July 2022 that she reported the claim to Aegis through her counsel.[9] Upon receiving the claim Aegis engaged Coast to Coast Claim Services, LLC ("CCCS") to assess Garcia's loss.[10] CCCS inspected the property with Garcia and her attorney in September 2022.[11] The CCCS Loss Report states that the "loss notice indicates that the damage was from FREEZE occurring on 2/16/2021."[12] The "insured stated freezing pipes in the home caused water damages in multiple rooms."[13] The "inspection revealed that the damages appear to be repaired; however based on the circumstances, it appears there were several water leaks in the home from a freeze that caused the

---

[7] Id. at App'x 019, 048.

[8] Id. at App'x 062.

[9] Document No. 18, Response at ¶ 9.

[10] Document No. 16, App'x 070.

[11] Id.

[12] Id.

[13] Id. at App'x 071.

plumbing lines to burst and have since been repaired."[14]  CCCS discovered no damage to the home's exterior.[15]  CCCS concluded its Loss Report by recommending payment to Garcia in the amount of $1,500, the Policy's sublimit for an above the slab leak.[16]

Within two weeks after the inspection, Aegis acknowledged Garcia's "claim for interior water damage due to pipe bursts." Aegis explained:

> Your policy of insurance includes the Texas Homeowners Amendatory Endorsement MS HO 90 Additional Perils Coverage with Limited Water Coverage Endorsement.  This endorsement provides coverage for sudden and accidental discharge or overflow of water from a plumbing system located above the slab.  The limit of coverage provided is $1,500.00.
>
> . . .
>
> A settlement payment of $1,500.00 has been issued.  The limit of coverage for the water leak occurring above the slab is now exhausted and no additional payments can be made.[17]

Garcia admits that Aegis paid her the $1,500 sublimit for damage from a sudden and accidental discharge of water, but Garcia contends that the $1,500 did not satisfy Aegis's liability under

---

[14] Id.

[15] Id.

[16] Id. at App'x 070, 073.

[17] Id. at App'x 074-075.

the Policy.[18] Thus, Aegis filed this suit asking the Court to declare that Aegis's liability for Claim No. 834441 was satisfied by Aegis's payment of the $1,500.[19] No counterclaim has been filed, and Aegis now moves for summary judgment on its claim for declaratory relief.

## II. Standard

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986) (quotation marks omitted). The movant meets its initial burden by demonstrating "the absence of a genuine issue of material fact" and that it is entitled to judgment as a

---

[18] Document No. 18, Garcia Affidavit at ¶ 7 ("Plaintiff Insurer solely paid the applicable Sublimit."); Document No. 1 at ¶ 10; Document No. 6 at ¶ 10.

[19] Document No. 1 at 7.

matter of law. *See* Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting Celotex, 106 S. Ct. at 2553).

Once the movant carries this burden, the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 106 S. Ct. at 2553-54). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court must consider the cited materials but may also consider other materials in the record. FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n. 7 (5th Cir. 1992)); *see also* Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." (citing cases)).

In considering a motion for summary judgment, the court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if the factfinder could reasonably find in the nonmovant's favor, then summary judgment must be denied. Id.

### III. Discussion

As observed above, Aegis seeks a declaratory judgment that its liability for Garcia's claim--Claim No. 834441--was satisfied by Aegis's payment of $1,500.[20] The Court "may declare rights and other legal relations of any interested party seeking such declaration" in "a case of actual controversy within its jurisdiction." See 28 U.S.C. § 2201(a). The Court has diversity jurisdiction over the case.[21] See 28 U.S.C. § 1332(a)(1), (c).

---

[20] Document No. 1 at 7.

[21] Id. at ¶¶ 1-4.

"Under Texas law, insurance policies are interpreted in accordance with the rules of construction that apply to all contracts generally." Sharp v. State Farm Fire & Cas. Ins. Co., 115 F.3d 1258, 1260 (5th Cir. 1997) (citation omitted). Although ambiguities in insurance contracts are strictly construed against the insurer, "this rule of strict construction applies *only* if the contract is determined to be ambiguous." Id. at 1260-61 (emphasis in orig.). Thus, the Court looks first to the language of the contract itself, and if the language is unambiguous, the Court must "hold the parties to the plain terms of the contract to which they have agreed[.]" Id. at 1261, 1263.

The relevant terms of the Policy are as follows:

SECTION I – PERILS INSURED AGAINST

COVERAGE A (DWELLING) AND
COVERAGE B (PERSONAL PROPERTY)

We insure against physical loss to the property described in Coverage A (Dwelling) and Coverage B (Personal Property) caused by a peril listed below, unless the loss is excluded in Section I Exclusions.

1. Fire and Lightning.

2. Sudden and Accidental Damage from Smoke. . . .

3. Windstorm, Hurricane and Hail.

   This peril does not cover:

   a. loss to the following:

      (1) cloth awnings, greenhouses and their contents, buildings or structures located

>>wholly or partially over water and their contents.
>
>>(2) radio and television towers, outside satellite dishes, masts and antennas, including lead-in wiring, wind chargers and wind mills.
>
>b. loss caused by rain, snow, sand or dust, whether or not driven by wind, unless the direct force of wind or hail makes an opening in the roof or wall and the rain, snow, sand or dust enters through this opening and causes the damage.
>
>4. Explosion.
>
>   This peril does not include loss caused by or resulting from:
>
>   a. Breakage of water, sewage or steam pipes or any component of a plumbing system.
>
>   b. Freezing of plumbing, heating or air conditioning systems or household appliances
>
>   c. Discharge, leakage or overflow of water, sewage or steam from within a plumbing, heating or air conditioning system or household appliance.
>
>5. Aircraft and Vehicles. . . .
>
>6. Vandalism and Malicious Mischief.
>
>7. Riot and Civil Commotion.
>
>8. Theft . . . .[22]

---

[22] Document No. 16, App'x 019-020, 028-029, 039-040 (Policy as amended by Endorsement MS HO 29).

Also included in the Policy was Texas Homeowners Amendatory Endorsement MS HO 90 Additional Perils Coverage with Limited Water Coverage, the relevant portions of which are as follows:

> For the premium charged, under Section 1 – PERILS INSURED AGAINST, we insure direct loss to property described In COVERAGE A (DWELLING) and COVERAGE B (PERSONAL PROPERTY) caused by the additional perils listed below. But we do not cover a loss that is excluded in the EXCLUSIONS section of this endorsement or in the EXCLUSIONS section of the policy.
>
>> 1. Sudden and accidental discharge or overflow of water or steam from within any portion of a plumbing system that is above the surface of the ground and is above and outside the slab or foundation, or from an air conditioning system that is above the surface of the ground and is above and outside the slab or foundation, or from within a household appliance.
>>
>> . . .
>>
>> Our total limit of liability for any loss caused by this peril is $1,500.
>>
>> This is not additional insurance. It is included in the limit of liability of COVERAGE A (DWELLING) and COVERAGE B (PERSONAL PROPERTY).
>
> . . .
>
> For an additional premium, you may select a higher limit of liability for any loss caused by peril 1. or peril 2. listed above. If selected, the higher limit of liability for these perils will be shown on the declarations page as ADDITIONAL PERILS COVERAGE.[23]

Although she had the option to pay an additional premium to acquire a higher limit of liability for the covered water perils, there is no evidence that Garcia chose to purchase a limit higher than the

---

[23] Id. at App'x 019, 048.

standard $1,500 provided for on the face of Endorsement MS HO 90 and the Declarations page.

The uncontroverted summary judgment evidence establishes that Aegis paid Garcia the $1,500 Policy limits for loss resulting from a sudden and accidental discharge of water from within the plumbing system.[24] Garcia argues that additional coverage exists under the Policy's "Windstorm, Hurricane and Hail" peril.[25] She argues that the "Windstorm, Hurricane and Hail" peril covers "the types of extreme winter weather experienced during Winter Storm Uri. Freezing rain, snow, high winds and single-digit temperatures arguably fall within the scope of protection afforded."[26] The unambiguous wording of the Policy, however, does not permit such an interpretation of the windstorm peril. The only word mentioned in the windstorm peril that may be associated with a winter storm is the word "snow." But under Section I, Coverages A and B, 3.b., "loss caused by . . . snow [is *not* covered under the windstorm peril] unless the direct force of wind . . . makes an opening in the roof or wall and the . . . snow . . . enters through this opening and causes the damage." Here, there is no summary judgment

---

[24] Document No. 18, Garcia Affidavit at ¶ 7 ("Plaintiff Insurer solely paid the applicable Sublimit."); Document No. 1 at ¶ 10; Document No. 6 at ¶ 10.

[25] Document No. 18, Response at ¶ 25.

[26] Id.

evidence of any wind damage done to the roof or to the walls of the house, much less of any freezing snow entering the house through wind-driven gaping holes to cause the loss. CCCS's inspector, whose findings are the only summary judgment evidence pertaining to the exterior of the home, found at the Front Elevation: "There were not any damages to this elevation discovered, claimed, or related to the loss[;]" and again, successively at each of the Left Elevation, Back Elevation, and Right Elevation, he made the identical finding: "There were not any damages to this elevation discovered, claimed, or related to the loss."²⁷ Finally, as to the roof: "The roof of the property is not related to the claim."²⁸

Garcia herself in her Affidavit states that her "home and personal property suffered severe water damages caused by a pipe burst during a freeze on or about February 16, 2021[.]"²⁹ She makes no mention of a windstorm or of any exterior damage to her home opening a hole through which freezing snow entered. When she answered this suit she pled that she "filed a claim under the Policy for damages to real and personal property caused by a plumbing water supply pipe(s) on the Property which froze and burst

---

²⁷ Document No. 16, App'x 071.

²⁸ Id.

²⁹ Document No. 18, Garcia Affidavit at ¶ 7.

on or about February 16, 2021."[30] There is no summary judgment evidence whatever that a windstorm or any other named peril subject to the Policy's higher liability limits caused any damage to Garcia's home. *See* Guar. Nat. Ins. Co. v. Vic Mfg. Co., 143 F.3d 192, 193 (5th Cir. 1998) ("The insured bears the initial burden of showing that there is coverage").

Garcia's sweeping argument for adopting a "suggestion"--that the Policy's "wind/hail coverage suggests protection for major weather catastrophes like winter storm Uri"[31]--is wholly inconsistent with well-established law that requires the unambiguous terms of an insurance policy to be applied as written. "Insurance policies are interpreted using the same rules governing other contracts." Cont'l Cas. Co. v. N. Am. Capacity Ins. Co., 683 F.3d 79, 89 (5th Cir. 2012) (citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Crocker, 246 S.W.3d 603, 606 (Tex. 2008)). Courts must give words their "plain meaning" and "must not insert 'additional provisions into the contract.'" Id. "If the written instrument is worded so that it can be given only one reasonable construction, it will be enforced as written." Id. (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)).

---

[30] Document No. 1 at ¶ 8; Document No. 6 at ¶ 8.

[31] Document No. 18, Response at ¶ 26.

In the alternative, Garcia argues that the $1,500 sublimit for liability on burst pipes "should be voided because it violates public policy and does not provide realistic protection."[32] Garcia does not identify what dominant Texas public interest is violated by Garcia having acquired a homeowner's policy with Aegis's standard $1,500 sublimit for the water leakage risk. Nor does Garcia cite any authority that public policy requires a homeowner to purchase *any* homeowners insurance at all.

"The general rule is that competent persons shall have the utmost liberty of contract and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts." Fid. & Deposit Co. of Maryland v. Conner, 973 F.2d 1236, 1241 (5th Cir. 1992) (citation omitted). While agreements can be "invalidated on grounds of public policy," this is a narrow exception to the "general rule--an exception to be applied cautiously and only in plain cases involving dominant public interests." Id. "In exercising this exception, courts may not apply their own substantive views of public policy: 'Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Id.

---

[32] Id. at ¶ 29.

As observed above, Garcia cites no statute or legal precedent suggesting that providing insurance coverage of up to $1,500 on water leakage from burst pipes violates any public policy. The sole case Garica cites is <u>Zea v. Valley Feed & Supply, Inc.</u>, 354 S.W.3d 873 (Tex. App.--El Paso 2011, pet. dismissed) (mistakenly cited by Garcia as at 499 S.W.3d 631).[33] <u>Zea</u>, however, concerned the application of Texas's collateral estoppel doctrine, not Texas public policy. In fact, the word "policy" appears nowhere in the opinion, which Garcia misquotes as stating: "a contract term may be invalidated if it violates public policy[.]"[34] Garcia's public policy argument to recover more than the $1,500 sublimit on the water damage is without legal support and is rejected as frivolous.

Finally, Garcia argues that Aegis "should be equitably estopped from enforcing the $1,500 provision due to its agent's representations regarding the Policy's coverage."[35] There is no competent summary judgment evidence that any employee or agent of Aegis made any misrepresentation to Garcia regarding the Policy's coverage. Garcia's only putative proof of "misrepresentations"

---

[33] *See* Document No. 18, Response at ¶ 30.

[34] <u>Id.</u>

[35] <u>Id.</u> at ¶ 29.

are her own vague, non-specific, nameless, dateless, and conclusory accusations made in her Affidavit:

> If Plaintiff Insurer had not made misrepresentations regarding the extent of coverage for damages to my home caused by interior water damage, then I would not have purchased Plaintiff Insurer's Policy . . .
>
> I firmly believe Plaintiff Insurer made material misrepresentations because if I had not been adequately covered for damages to my home caused by interior water damage, then I would not have purchased insurance from Plaintiff Insurer . . .
>
> Plaintiff Insurer stated Plaintiff Insurer insured me for a certain peril but now refuses to pay full damages resulting from such peril . . .
>
> Plaintiff Insurer misrepresented material facts and policy provisions on subject coverage, including the extent of damage to my insured property . . .[36]

There is no summary judgment evidence of what was said, why it was false, who said it, and when it was said to Garcia. Garcia's affidavit fails to raise a genuine issue of material fact to be tried on her conclusory "misrepresentation" claim. *See, e.g.*, Audibert v. Lowe's Home Ctrs., Inc., 152 F. App'x 399, 401 (5th Cir. 2005) (recognizing that "conclusory allegations, speculation, conjecture, and unsubstantiated assertions do not satisfy [the nonmovant's summary judgment] burden of proof and production" (citing cases)). Aegis is entitled to summary judgment as a matter of law.

---

[36] Document No. 18, Garcia Affidavit at ¶¶ 19, 22, 23, 25.

IV. <u>Order</u>

For the foregoing reasons, it is

ORDERED that Plaintiff Aegis Security Insurance Company's Motion for Summary Judgment (Document No. 16) is GRANTED, and it is DECLARED that Plaintiff Aegis Security Insurance Company's contractual liability under Texas Homeowners Policy No. KOP60035342/R01, insuring the residence of Defendant Randi Garcia, for the losses sustained by Defendant Garcia to her insured property in February 2021, reported under Aegis Claim No. 834441, was satisfied and fully discharged by Aegis's payment to Defendant Garcia of $1,500.00.

A Final Judgment will be entered separately.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 29th day of March, 2024.

*Ewing Werlein, Jr.*
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE